TWOMBLY & AL. *v.* HUNEWELL, SHERIFF, &c.

Where an officer is charged by the original debtor with having lost or wasted a portion of the goods which he had attached, it is competent for him to excuse himself from liability by shewing that he has applied the amount to the use of the plaintiff, by paying with it the expenses of keeping the goods.
The expense of the safe custody of goods attached on mesne process, is a lien on the goods; and it is not affected by the allowance of a sum for that purpose by the Court in the taxation of costs for the original plaintiff.

THIS was an action of the case against the late Sheriff of this county, for the neglect of one of his deputies. The plaintiffs declared that the deputy, having a writ of attachment against them at the suit of one *Gay*, attached by virtue thereof a large quantity of goods,—that judgment was recovered in due course of law against them in favour of *Gay* for the amount of his debt, and costs of suit, "and thirty dollars allowed by "the Court in full of all expenses in keeping, storing and re- "moving said property attached, pending said suit, making "whole costs forty-nine dollars and sixty-five cents,"—that he duly sued out his writ of execution on the judgment,—yet the defendant and his deputies did not safely keep the attached goods while the suit was pending, and for thirty days after judgment, that they might be seised in execution, but within that time wasted, consumed and destroyed them, &c.

It appeared in evidence on the trial, that after the goods were attached, which were in the plaintiffs' store on one of the islands in the bay, they were left by the officer in the custody of one *Johnson*, at the request of *Twombly*, under whose control they were immediately placed again by *Johnson*;—that *Twombly* continued to manage the business and sell the goods as before, taking the money to his own use;—that the officer sometime after went to the store and caused an account to be taken of the goods attached and then on hand, and by agreement of all concerned, *Johnson's* accountable receipt was given up, and a new arrangement made. One *Hussey* was then appointed by the officer to superintend the attached property, of which he took charge accordingly; and with his permission *Twombly* sold a part of it, to the value of $175, for

which amount *Twombly* gave *Hussey* his note. All the residue of the property was either appropriated to the use of *Twombly*, or duly sold and accounted for on the execution, which issued on *Gay's* judgment against the present plaintiffs.

It further appeared that when *Hussey* was appointed to the charge of the goods, it was expressly agreed on the part of *Twombly*, that his services should be no expense to *Gay* or to the officer, and that *Twombly* should defray the whole of that charge. It also appeared that *Hussey* was retained in service longer than was anticipated, in consequence of *Twombly's* breach of his engagement to pay *Gay's* debt before judgment;—and that when the judgment was made up in favour of *Gay*, an allowance of thirty dollars was made in the taxation of costs, for the custody of the goods while under attachment, and for *Hussey's* care.

The plaintiffs contended at the trial for the right to recover the 175 dollars, which they said had never been applied to satisfy the judgment against them, which had been *otherwise* fully satisfied by *Twombly*. But the defendant resisted this demand, on the ground that the sum thus claimed had been wholly absorbed in the expense of the custody of the goods, and the wages of *Hussey*, for whose services *Twombly* engaged to pay.

The Judge who presided at the trial instructed the jury—that if they believed the testimony, *Twombly* had made a special agreement to pay all the expense incurred by *Hussey's* employment and services in the custody of the attached property;—that if those expenses exceeded what was expected, in consequence of the wrong and breach of promise on *Twombly's* part, of which they would judge, he could not avail himself of the objection;—that in the employment of *Hussey*, the officer and *Gay* were one;—that *Hussey* was in law the agent of the officer, to whom *Twombly* was indebted for the amount of his services;—that though the Court below, in the taxation of costs, had allowed the officer, as custody-fees, only thirty dollars, that could not affect his rights;—that the Court might justly consider the property attached as chargeable with that amount; and whether there was a special agreement on the part of *Twombly* to pay a larger sum, or not, was not a question to be *finally settled by them.* He further instructed them that

the payment of 175 dollars to *Hussey* was to be considered as a payment by the officer, his principal; and that therefore, as his wages amounted to more than that sum, exclusive of the thirty dollars allowed by the Court, it was competent for the officer to appropriate the money, thus in his hands, to his own indemnity, wherewith to pay *Hussey's* wages;—and that this was such an accounting for it, as to discharge him and the defendant from all liability in the present action; it would prevent circuity of action, and do justice to all concerned;—an object desirable in the present case, as *Gay* was admitted to have since died insolvent, and *Twombly* also to be destitute of any property.

The jury thereupon returned a verdict for the defendant, which was taken subject to the opinion of the whole Court upon the correctness of the Judge's instructions.

*Todd* and *Longfellow* now argued against the verdict. They insisted 1st. that the expense of keeping the goods was not a charge to the officer, and of course he could not retain for it. It was his duty to have removed them to a place of safety, in which case the whole expense would not have exceeded ordinary truckage and storage. The contract between *Twombly* and *Hussey* was wholly personal and private, with which the officer had nothing to do; and his payment to *Hussey* is entitled to no more favour than if, without request or assent, he had paid any other debt of the plaintiff.—But 2d.—if the sheriff had been liable to *Hussey* for his fees and expenses, yet this subject had been adjudicated by a Court of competent jurisdiction. The sheriff's fees and expenses are always chargeable, in the first instance, to the plaintiff, who taxes them in his bill of cost against the defendant. This taxation is wholly within the control of the Court which renders the judgment, and by that Court it has been finally determined in the present case without appeal or exception. *Sewall v. Mattoon*, 9 *Mass.* 535. *Blake v. Shaw*, 7 *Mass.* 506.

*Emery* and *Daveis*, è *contra*, contended—1st. that the expense of keeping the goods was in the first instance a charge on the property itself, to be deducted by the sheriff from the proceeds

of the sales. *Tyler v. Ulmer*, 12 *Mass.* 168. And thus it is ultimately paid by the debtor. *Caldwell v. Eaton*, 5 *Mass.* 402. If the expenses in this case were large, it was the fault of *Twombly.* A keeper was necessary, because of the peculiar situation of the goods. 2d. As to the adjudication of the question by the Common Pleas it was void ;—1. because that Court was not competent to decide it, for the expenses were a lien on the goods, which the Court could neither destroy nor impair ; and 2d. because the question was not properly before them, the officer not being a party, and never having been heard. It would be a violation of one of the plainest principles of natural justice, to conclude the rights of any citizen, without affording him an opportunity to maintain and defend them.

MELLEN C. J. delivered the opinion of the Court.

The justice of this case is so evidently with the defendant upon the finding of the jury and the report of the Judge, that, unless some principle of law clearly forbids it, we feel disposed to confirm the verdict.

It is perfectly plain that an officer, who attaches personal property on mesne process, is bound to keep it safely in possession or under his control; and that he is answerable for the property, in case of loss by his omitting to take proper care of it.—This is the law where neither of the parties consents to any particular disposition of it.

If the plaintiff consents to any such particular arrangement or disposition, he cannot afterwards object to it or claim damages of the sheriff on account of it.—So if such disposition be made by the consent of the defendant and for his accommodation, he ought not to complain of the consequences of it.— In some instances an arrangement is made by consent of *both parties* and the *Sheriff;* as in case of attachment of personal property, where it is agreed by all concerned that the property shall be sold by the officer *before judgment.*—In such a case the officer is justified in carrying the agreement of the parties into effect.—In the case at bar the goods attached were, at the *request,* and for the *accommodation* of *Twombly,* left in his possession, under the accountable receipt of *Johnson ;* and were after-

wards, by a general arrangement among all concerned, placed in the care and custody of *Hussey*, who was appointed by the officer as his agent to take care of the property ; *Twombly* agreeing that the services of *Hussey*, thus appointed, should be no expense to *Gay* or the officer; but should be a charge upon himself.— The note for $175 was given by *Twombly* to *Hussey* for a part of the goods which he had sold by *Hussey's* permission ; and all the residue of the goods attached, or their proceeds, have been accounted for, and have gone to the use and benefit of *Twombly* ; and the question is whether the above sum of $175 has not *also* been so applied.—A payment of that sum to *Hussey* was in law a payment to the officer, his principal.—As the officer appointed *Hussey*, he was bound to pay him ; and *Twombly* engaged to indemnify him by furnishing the funds for the purpose.—The officer then, having their funds to the amount of $175 in his hands, instead of paying them over to *Twombly* and then recovering them back again upon *Twombly's* agreement to pay them, retains them for his own indemnity and the payment of *Hussey's* wages. And why should he not be permitted so to do ? It is true, that in an action of *assumpsit* the $175 note could not be offset against the plaintiff;—but in the present action, wherein the officer is charged with having lost and wasted the goods, we are well satisfied that it is competent for the defendant to excuse himself from liability, by shewing that he has applied that amount to the use and benefit of *Twombly*, by paying *Hussey's* wages with it, according to his express agreement, for services in guarding the property where it was left for *Twombly's* accommodation ;—*unless* the taxation of the $30 by the Court is to be considered as a final adjustment of all claim on *Twombly*, beyond that sum, on account of *Hussey's* wages.—We do not consider this taxation as affecting the question.—The sum thus taxed, *Gay* was authorised to recover—it was a direct lien on the goods ; and the Court would have had just the same power to allow that sum in the taxation, had there not been any express agreement of *Twombly* to defray *all the expenses of custody*, high as was their amount.—But it does not appear that the officer had any knowledge of this taxation, or ever consented that *that* sum should be accepted by him as an equivalent for the engagement of *Twombly*. We are very clear

that such a proceeding cannot deprive the officer of his claim, or settle his rights upon the contract.—We are all of opinion that, upon the evidence before us, the motion for a new trial cannot prevail.—There must be

*Judgment on the verdict.*